IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CASEY STEPHEN MONFILS**, | Case No. 3:17-cv-1707-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **WESTON INVESTMENT COMPANY LLC, DBA AMERICAN PROPERTY MANAGEMENT**, | |
| Defendant. | |

Casey Stephen Monfils. *Pro se* plaintiff.

Peter S. Hicks, JORDAN RAMIS PC, 360 SW Bond Sttreet, Suite 510 Bend, OR 97702; Robyn L. Stein, JORDAN RAMIS PC, Two Centerpointe Drive, Sixth Floor, Lake Oswego, OR 97035. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Casey Monfils, *pro se*, brings this lawsuit against Defendant Weston Investment Company LLC, dba American Property Management. In his amended complaint, Plaintiff alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and Or. Rev. Stat. ("O.R.S.") § 659A.112(2)(e). ECF 1-1 at pages 33-46. Defendant has moved to dismiss for failure to state a claim under Rule 12 of the Federal Rules of Civil

Procedure. ECF 9. Plaintiff responded and, among other things, sought to add a claim for failure to accommodate and additional facts not set forth in his amended complaint. ECF 10. Defendant objected. ECF 11. Plaintiff filed a sur-reply (ECF 14) and moved for leave to amend his response (ECF 15), which the Court construes as a motion for leave to file a second amended complaint. Because Plaintiff's claim, as alleged in his amended complaint, survives Defendant's motion to dismiss even without the additional allegations that Plaintiff proposes, this Opinion and Order does not consider Plaintiff's proposed additional allegations or Defendant's objections to them. For the reasons discussed below, Defendant's motion to dismiss is DENIED. In addition, Plaintiff has leave to file a second amended complaint within 14 days from the date of this Opinion and Order, if Plaintiff so chooses.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the

PAGE 2 – OPINION AND ORDER

plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "'Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

For purposes of this motion, the Court takes as true the following facts alleged in the amended complaint. Plaintiff has a permanent injury in his neck and right thigh. Plaintiff

PAGE 3 – OPINION AND ORDER

underwent surgery in 1989, which resulted in two fused discs in his neck and again in 2005 for an additional three discs for a total of five fused discs in his neck. This causes Plaintiff sharp pain and a limited range of motion. Additionally, Plaintiff developed nerve damage that resulted in a permanent injury to his right thigh. He experiences weakness when walking and standing. Plaintiff was accepted into the Oregon Preferred Worker Program ("OPWP") for permanently disabled workers. OWPW provides various subsidies and benefits for employers of disabled workers and their disabled employees.

Defendant hired Plaintiff on May 15, 2007, as a "residential manager," managing apartment units at Defendant's Meadow Park Apartment Complex. During his interview with Larry Bricker ("Bricker"), Plaintiff disclosed his Preferred Worker status and his workplace restrictions. Plaintiff provided Bricker with a note from Plaintiff's doctor, Linda Beale, M.D., documenting his vocational restrictions of lifting less than 10 pounds and limiting standing and walking to what was tolerable. When asked on a questionnaire whether Plaintiff was aware of any condition that could impair his ability to perform the duties of the job, Plaintiff answered "no." The description that Plaintiff had been given did not include anything that was outside his physical work capacity.

OPWP provided Plaintiff with a special ergonomic desk and chair to address his neck disability, and Bricker provided Plaintiff with a light hand-truck instead of a heavy hand-truck to address Plaintiff's lifting restrictions. Bricker also accommodated Plaintiff by providing a Bluetooth wireless headset to address Plaintiff's neck injuries.

In October 2007, Bricker assigned Plaintiff the task of installing smoke alarms in approximately 2,400 apartments. To accomplish this, Plaintiff was provided with a backpack in which to carry the smoke alarms, a 25-pound drill, a belt and holster to carry the drill, and a

lightweight stepladder. Plaintiff told Bricker that this project would be difficult for Plaintiff in light of his neck and right thigh conditions. Bricker told Plaintiff that Defendant's owner, Joe Weston, would be "awfully upset" if Plaintiff did not perform this work. Plaintiff performed the work beyond Plaintiff's documented restrictions, despite his initial reservations.

During the summer of 2008, Plaintiff received a new project requiring him regularly to clean a swimming pool. This required Plaintiff to lift 50-pound chemical containers and use a pool skimmer. In July 2008, Plaintiff received a new work restriction of no more than eight-hour days. It is unclear whether Plaintiff provided Defendant with notice of the updated work restriction before Plaintiff was assigned the project to clean the pool, and if so, whether the additional hours imposed by the pool assignment were beyond Plaintiff's limitations. Regardless, at some point after the project was underway, Plaintiff told Bricker that the work was beyond Plaintiff's capabilities. In response, Bricker removed Plaintiff from the project and returned Plaintiff to his management position, which was within his work restrictions.

From sometime in 2008 through October 2015, Plaintiff was instructed to remove abandoned property from various apartments under the supervision of Defendant's supervising manager Mike Williamson ("Williamson"). Plaintiff was required to move various objects weighing between 20 pounds and 100 pounds to the middle of each apartment so Defendant's service department could dispose of them. In late 2013, Plaintiff asked Williamson to accommodate Plaintiff by having the service department pick-up the abandoned property from each room instead of from a central location in each apartment. Plaintiff made this request to accommodate his lifting and walking limitations. Williamson never provided that or any alternative accommodation. Plaintiff also submitted two notes to Williamson, dated September 9, 2015, and November 6, 2015, respectively, requesting that the abandoned property be picked up

in a more timely fashion. It is unclear whether this was a requested accommodation by Plaintiff or merely concerning a scheduling matter. Williamson never responded to either note.

From December 2008 through October 2015, Williamson instructed Plaintiff to move filing cabinets weighing at least 100 pounds from the living areas of various apartments to the closet of those apartments. Although Plaintiff was using a hand truck, around late 2014 he notified Williamson that moving the filing cabinets was causing Plaintiff pain and that moving them was above Plaintiff's 10-pound lifting restriction. It is not clear whether this issue was addressed.

Between 2009 and 2014, Defendant tasked Plaintiff with extra assignments beyond his duties as a residential manager. The additional work caused Plaintiff to have to work 60 to 70 hours per week. In December 2008, Bricker told Williamson about Plaintiff's eight-hour-per-day restriction. Williamson ignored Plaintiff's restriction and continued requiring Plaintiff to work beyond his limitation. In late 2014, after discovering that his condition was worsening, Plaintiff again asked Williamson to have the abandoned property picked up more often and more timely. Williamson told Plaintiff that Williamson would get back to Plaintiff, but never did. MRI examinations of Plaintiff taken in 2011 and 2015 showed that Plaintiff's neck injury had substantially worsened.

In November 2015, Defendant terminated Plaintiff's employment for reasons unrelated to Plaintiff's disability. Plaintiff does not take issue with his termination.[1]

---

[1] Plaintiff's amended complaint mentions his termination in November 2015, but does not give his understanding of the reason. Plaintiff's BOLI filings indicate that Plaintiff was terminated for inappropriate fraternization with tenants and other related alleged misconduct. Plaintiff does not contend that his termination is related to his ADA claim.

**DISCUSSION**

The Court construes Plaintiff's amended complaint as asserting claims for disability discrimination under the ADA, 42 U.S.C. § 12112(b)(5)(A), and Oregon law, O.R.S. § 659A.112(2)(e). Both statutes bar employers from discriminating against employees by failing to make reasonable accommodations for known disabilities. Oregon's disability law is "construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act." O.R.S. § 659A.139.

The ADA bars employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute defines such discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The Ninth Circuit has described the elements of a failure to accommodate claim as follows: "(1) [Plaintiff] is disabled within the meaning of the ADA; (2) [Plaintiff] is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [Plaintiff] suffered an adverse employment action because of his disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003)).

The sole argument that Defendant raises in its motion to dismiss is that Plaintiff fails to allege that he suffered an adverse employment action. An adverse employment action is a change to an employee's job that "must 'materially' affect the compensation, terms, conditions or privileges of the plaintiff's employment." *Weeks v. Union Pac. R.R. Co.*, 137 F. Supp. 3d 1204, 1217 (E.D. Cal. 2015). Along with "[d]iscrete acts such as termination, failure to promote, denial

of transfer, or refusal to hire [that] are easy to identify," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), a less obvious action such as "assigning more, or more burdensome, work responsibilities, is an adverse employment action" as well. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Adverse employment actions "[include, among other things,] severe verbal and physical abuse, discriminatory overtime, and termination." *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 819 (9th Cir. 2002).

Plaintiff alleges that, although the job description provided to him did not include anything out of his physical work capacity, he experienced the following during the course of his employment with Defendant: (1) Defendant required Plaintiff to work more hours than his work restrictions allowed; (2) Defendant required Plaintiff to install smoke alarms, despite Plaintiff alerting Defendant that it would aggravate his disability; and (3) Defendant required Plaintiff to move heavy furniture, despite Plaintiff alerting Defendant that it would aggravate his disability. Under *Davis*, Plaintiff's allegations that he was assigned tasks beyond his physical capabilities after having informed his supervisor of his limitations and being given a description of the job that was within his capabilities are sufficient to demonstrate that Plaintiff was "assign[ed] more, or more burdensome, work responsibilities." 520 F.3d at 1089. Similarly, Plaintiff's allegation that he was required to work more weekly hours than his work restrictions allowed is sufficient to allege that he experienced discriminatory overtime which, under *Kang*, is a form of an adverse employment action. 296 F.3d at 819. Plaintiff also alleges that, as a result of these more burdensome work activities, he sustained additional injury to his neck and back.

## CONCLUSION

Defendant's Motion to Dismiss (ECF 9) is DENIED, and Plaintiff's Motion for Leave to Amend Plaintiff's Response (ECF 15) is DENIED AS MOOT. In addition, Plaintiff has leave to

file a second amended complaint within 14 days from the date of this Opinion and Order, if Plaintiff so chooses.

**IT IS SO ORDERED**.

DATED this 30th day of March, 2018.

Michael H. Simon  
United States District Judge