**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **CASEY STEPHEN MONFILS**, Plaintiff, v. **WESTON INVESTMENT COMPANY, LLC dba AMERICAN PROPERTY MANAGEMENT**, Defendant. | Case No. 3:17-cv-1707-SI  **OPINION AND ORDER** |

Casey Stephen Monfils. *Pro se* plaintiff.

Peter S. Hicks, JORDAN RAMIS PC, 360 SW Bond Street, Suite 510 Bend, OR 97702; Robyn L. Stein, JORDAN RAMIS PC, Two Centerpointe Drive, Sixth Floor, Lake Oswego, OR 97035. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Casey Stephen Monfils, *pro se*, filed claims against his former employer American Property Management under the Americans with Disabilities Act ("ADA") and Oregon workplace anti-discrimination law. He alleges that Defendant failed to accommodate his disability by making him work more than eight hours per day and by making him lift heavy objects. Plaintiff also alleges that Defendant discriminated against him by failing to promote

him. Finally, Plaintiff alleges that Defendant discriminated against him for filing a workers compensation claim. Plaintiff moves for summary judgment on his failure to accommodate claim. Defendant moves for summary judgment on all of Plaintiff's claims. For the reasons that follow, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the]

same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586. A pro se litigant is held to the same standard in responding to a motion for summary judgment as a represented party, and thus must go beyond bare allegations in the pleadings and establish with evidentiary support that there exists a genuine dispute of material fact. *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

## BACKGROUND

Plaintiff worked as a residential property manager for American Property Management from May 2007 until November 2015. Plaintiff has a permanent injury in his neck and right thigh that seriously restricts his ability to lift heavy objects and causes him pain. Plaintiff underwent surgery in 1989, which resulted in two fused discs in his neck, and again in 2005 for three more fused discs and currently has five fused discs in his neck. Plaintiff also developed nerve damage that resulted in a permanent injury to his right thigh. He experiences weakness when walking and standing. Plaintiff was accepted into the Oregon Preferred Worker Program ("OPWP") for permanently disabled workers. OPWP provides various subsidies and benefits for employers of disabled workers and their disabled employees.

In May 2007, Plaintiff applied for a position with Defendant and interviewed with Larry Bricker ("Bricker"). When Defendant hired Plaintiff in May 2007 as a residential manager for one of Defendant's apartment complexes, Plaintiff disclosed his Preferred Worker status and provided Bricker with a note from his doctor describing Plaintiff's vocational restrictions. Those restrictions prohibited Plaintiff from lifting more than ten pounds and limited his standing and walking to what was tolerable. Plaintiff was given a description of his job duties and answered "no" when asked if he was aware of any condition that could impair his ability to perform the duties listed. OPWP provided Plaintiff with a special ergonomic desk and chair to address his neck disability, and Bricker provided Plaintiff with a light hand-truck to accommodate Plaintiff's lifting restrictions and a Bluetooth headset to accommodate his neck injuries.

Shortly after starting his employment with Defendant, however, Plaintiff realized that the income from the residential manager position would not be enough to meet his financial obligations. He began to take on other jobs for Defendant. In 2007, he was assigned the task of inspecting and installing smoke alarms in 2,400 apartments. This involved carrying a backpack containing smoke alarms, a 25-pound drill, and a stepladder.

In late 2007, Plaintiff was involved in a car accident that caused additional injury to his neck. Five weeks after the accident, Plaintiff's doctor advised that he could return to work, but could only work two hours per day. Later, his doctor permitted him to work four hours per day, and eventually, sometime in July of 2008, Plaintiff returned to work with a medical restriction allowing no more than eight hours per day. Plaintiff filed a workers' compensation claim in connection with the accident, but his claim was denied by Defendant's insurer.

In 2008, Plaintiff received a new project that involved cleaning swimming pools, which required him to lift 50-pound containers and work 60-70 hours per week. Defendant's Bricker

repeatedly told Plaintiff not to lift heavy items, but Plaintiff saw no alternative that would get the job done. In early 2008, Bricker moved to a different department and Plaintiff submitted a letter of interest for Bricker's position. Plaintiff did not get the job, and Mike Williamson ("Williamson") was hired and became Plaintiff's supervisor. Around the same time, Plaintiff sought, and received, a position managing one of Defendant's larger apartment complexes.

From 2008 until 2014, Plaintiff continued to volunteer for additional tasks, and was assigned additional tasks, beyond his eight hour per day (40 hour per week) work restriction. Plaintiff also states that he had "down time" during the day and could take on additional sedentary work for Defendant from his apartment. In 2014, Plaintiff went to Williamson's office and told Williamson that Plaintiff's medical restrictions prevented him from working more than 40 hours per week. After that, Williamson stopped asking Plaintiff to work more than 40 hours in any week.

On several occasions from 2009 until November 2015, Plaintiff lifted heavy items, which caused pain to his neck. Defendant's Service Department was responsible for moving heavy items, and Defendant instructed Plaintiff to call the Service Department to pick up any property that tenants left behind when they moved. Plaintiff alleges, however, that it was often his responsibility to collect the left-behind items into one room, so they could be picked up by the Service Department. Plaintiff adds that the Service Department often took longer than a week to pick up heavier items and tenants would complain about unsightly abandoned property. Rather than wait for the Service Department to arrive, Plaintiff would often decide to move the property himself. Plaintiff alleges that he repeatedly raised concerns about the Service Department's delay in promptly removing left-behind property, but his concerns were not well received by Defendant's management.

Sometime in October 2015, Plaintiff filed a worker's compensation claim in connection with the excess hours beyond his 40 hours per week restriction. That claim was denied. Also in late 2015, a parts manager position became available in the Service Department. Plaintiff submitted a letter of interest to the Service Department but never received a response. In November 2015, Defendant terminated Plaintiff's employment for reasons that all parties agree are unrelated to this lawsuit. In October 2016, Plaintiff filed a claim with Commissioner of the Oregon Bureau of Labor and Industries ("BOLI"). Plaintiff filed this lawsuit within 90 days of receiving his right-to-sue letter.

## DISCUSSION

### A. Statute of Limitations

Defendant argues that most of Plaintiff's claims are barred by the applicable statute of limitations. Under Oregon law, "any person claiming to be aggrieved by an alleged unlawful practice" may file a complaint with BOLI no later than one year after the alleged unlawful practice occurred. Or. Rev. Stat. 659A.820(2). The ADA does not contain an express statute of limitations but borrows the statute of limitations that is applicable to the most analogous state law. *See Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015). As a result, Plaintiff's ADA claims will be subject to the same statute of limitations as his Oregon law claims. Plaintiff filed his BOLI complaint in October 2016. Any events that occurred before October 2015, thus, are time-barred.

Many of the events that Plaintiff describes in his Amended Complaint and motion for summary judgment occurred in 2007 and 2008. Plaintiff states that after he confronted Williamson about his 40-hour work restrictions in 2014, Williamson stopped asking Plaintiff to work more than 40 hours per week. Thus, Plaintiff's claim that Defendant failed to accommodate

his disability by making him work more than 40 hours per week is time-barred.[1] Similarly, many of the incidents in which Plaintiff claims that he was forced to lift heavy objects occurred before October 2015. Any incidents that occurred before October 2015, such as the smoke alarm installation project and the swimming pool project, thus, are also time-barred.

**B.  Failure to Accommodate Claim**

Plaintiff alleges that Defendant failed to accommodate his disability by repeatedly requiring him to perform tasks that exceeded his medical restrictions. An employer fails to accommodate an employee with a disability when "the employer does not make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability." Or. Rev. Stat. 659A.112(2)(e). The ADA "treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Most of Plaintiffs allegations for his failure to accommodate claim involve incidents that occurred in 2007 or 2008. Plaintiff fails to provide any evidence, other than the allegations made in his Amended Complaint or in his Motion for Summary Judgment, to support most of his

---

[1] Plaintiff argues that because he frequently worked more than 40 hours in a week, the continuing violation doctrine should apply and make his claims timely. The continuing violation doctrine "extends the accrual of a claim if a continuing system of discrimination violates an individual's rights 'up to a point in time that falls within the applicable limitations period.'" *Douglas v. Cal. Dept. of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001) (quoting *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982)). Because none of the alleged violations occurred within the statute of limitations, the continuing violations doctrine does not make Plaintiff's claims timely. Further, Plaintiff provides no evidentiary support beyond the pleadings that he worked more than 40 hours per week. The "payroll records" that he attaches to his Motion for Summary Judgment do not indicate hours worked because Plaintiff was a salaried employee.

allegations that he was often required to move property that tenants left behind.[2] Plaintiff does, however, provide some evidence documenting one incident in late October 2015 in which he moved heavy furniture. Plaintiff offers as evidence in support of his failure to accommodate claim a typed note that he purportedly sent to Williamson about an incident in which Plaintiff lifted heavy furniture.[3] The note states:

> When I was at Huntington House on October 28th a tenant left a large couch and love seat at the entrance to the complex. The couch and love [seat] are still in the entrance and the Service department still hasn't picked it up. I had a tenant chew me out and I had to move them next to the garbage. I've talked to both you and [S]ervice about picking abandoned property up when it's a hazard to the tenant. It takes sometimes a whole week for them to pick it up and many times I end up having to move it because of the hazard. Please have them pick these things up timely.

This note is insufficient to establish a genuine issue of material fact on Plaintiff's failure to accommodate claim. First, the note establishes that it was the job of the Service Department, and not Plaintiff, to lift and move heavy objects. Second, the note states that Plaintiff moved the furniture at the request of a tenant, not Defendant. Contrary to Plaintiff's claims, this note suggests that Defendant accommodated Plaintiff's disability by requiring its Service Department, not Plaintiff, to move and remove heavy objects. There is no evidence in the record to support Plaintiff's assertion that Defendant failed to accommodate Plaintiff's disability after October 2015. Plaintiff's claim for failure to accommodate fails.

---

[2] Plaintiff asserts that tenant records would show the occasions in which he had to move abandoned property, but he recognizes that he failed to request any tenant records in discovery, and Plaintiff did not provide any such evidence to the Court.

[3] The note appears to have been typed and printed, and although a date appears at the top of the page, there is no information whether, and if so when, the note was sent to Williamson. Defendant disputes that it ever received this note, and Plaintiff offers no evidence other than the note itself.

## C. Discrimination in Promotion

Plaintiff's Amended Complaint describes two incidents in which he believes he suffered discrimination by not receiving a promotion. The first took place in 2008 and is thus time-barred. The second incident occurred in 2015, when a position opened in the Service Department for a parts manager. Plaintiff asserts that he mailed a letter of interest to the Service Department and called the head of that department, but never received a response to either his letter or his telephone call.

To state a claim for employment discrimination under the ADA (and Oregon law) a plaintiff must show that he: "(1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of [his] disability." *Snead v. Metro Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). Plaintiff is disabled, and the denial of a promotion can be an adverse employment action. *See Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995). Plaintiff, however, never asserts, either in his Amended Complaint or in his Motion for Summary Judgment, that there was any connection between his disability and the failure to receive the promotion. By contrast, Defendant has submitted a sworn declaration from Williamson that, by company policy, merely submitting a letter of interest is insufficient to apply for a position—an application is also required. Plaintiff does not allege that he ever submitted an application for the Service Department position. Plaintiff has not shown a *prima facie* case of discrimination, and Defendant has asserted a legitimate nondiscriminatory reason for why Plaintiff did not receive the promotion. Plaintiff offers no evidence that the proffered reason is pretext or is otherwise untrue. *See Snead*, 237 F.3d at 1093. Plaintiff's discrimination in promotion claim fails.

## D. Discrimination in Workers' Compensation

Defendant moves for summary judgment on Plaintiff's claim for discrimination in filing a workers' compensation claim. To establish a *prima facie* claim for discrimination against a

PAGE 9 – OPINION AND ORDER

worker seeking workers' compensation benefits, an employee must show: (1) invocation or use of the workers' compensation system; (2) an adverse employment action; and (3) a causal link between the two. *See Kirkwood v. W. Hyway Oil Co.*, 204 Or. App. 287, 293 (2006); *see also Dunlap v. Liberty Nat. Prods., Inc.*, 2013 WL 6177855 at *9 (D. Or. Nov. 25, 2013). Plaintiff alleges that he filed workers' compensation claims in 2008 and 2015, but he never alleges, nor does he provide any evidentiary support for, any adverse employment action taken in response to those workers' compensation claims. He merely alleges that both claims were denied. Thus, Plaintiff's claim for discrimination in workers' compensation fails.

## CONCLUSION

Plaintiff's Motion for Summary Judgment (ECF 30) is DENIED. Defendant's Motion for Summary Judgment (ECF 34) is GRANTED. This case is dismissed.

**IT IS SO ORDERED**.

DATED this 3rd day of December, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge